UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

R.L.,

                Plaintiff,

v.

LELAND DUDEK,[1]
Commissioner of Social Security,

                Defendant.

**DECISION AND ORDER**
23-CV-608-A

---

## I.    INTRODUCTION

Plaintiff R.L. brings this action against the Commissioner of Social Security (hereinafter the "Commissioner"), seeking review of the Commissioner's determination denying Plaintiff disability benefits under the Social Security Act. Plaintiff (Dkt. # 4) and the Commissioner (Dkt. # 7) have cross-filed motions for judgment on the pleadings. Plaintiff's sole contention is that the Administrative Law Judge ("ALJ") erred in determining that Plaintiff's impairments do not prevent him from performing substantial gainful activity.  Specifically, Plaintiff maintains that the ALJ failed to rely on substantial evidence in assessing the RFC, but instead, relied improperly on his own lay opinion after failing to develop the record for opinion evidence relating to the relevant period.  For the reasons set forth below, the Plaintiff's motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

---

[1] Leland Dudek is the Acting Commissioner of Social Security.  He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

### A. Procedural History

On February 25, 2021, Plaintiff R.L. filed an application requesting Social Security Disability (Title II) and alleging that he was disabled beginning on June 30, 2019—which is also his date last insured—based upon his claim that he had back issues, flat spine syndrome, was unable to lift over four (4) pounds, Ehlers-Danlos Disease, overly flexible joints, and skin which is translucent and bruises easily. (T. 214, 222).[2] Plaintiff's claim was denied initially on April 1, 2021, and upon reconsideration on April 29, 2021. Thereafter, Plaintiff filed a request for a hearing. Plaintiff, who was represented by counsel, appeared and testified at a phone hearing before ALJ Sean Teehan, on January 13, 2022. (T. 1-44). On March 30, 2022, the ALJ issued an unfavorable decision which determined that Plaintiff was not disabled. (T. 7). On May 1, 2023, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (T. 50-55), and this action followed.

### B. Factual Background

Plaintiff was born in October of 1990, and he was 28 years old on the date last insured. (T. 69, 75). His education is limited having completed ninth grade. (T. 9). Plaintiff's previous experience included working as a taxi driver, auto detailer, stock clerk, and lube servicer. (T. 68-69).

---

[2] References herein preceded by "T" are to consecutively paginated, Bates-stamped pages within the administrative transcript of official proceedings in this case (Dkt. #3).

1. **Treatment History:**

    a. **Hospital Records**

        i. **Prior to Date Last Insured**

Prior to the relevant period, Plaintiff, between 2013 and 2016, made frequent visits to hospital emergency rooms (ER) with a variety of pain complaints—ranging from finger and hand pain (T. 416-19, 50-453, 486-501), to toe pain (T. 456-459), to vomiting and flu symptoms (T. 460-466, 569-574), to nose pain (T.492-495), to leg and back pain. (T. 511-14, 467-471, 477-478). An I-Stop check revealed Plaintiff had multiple narcotics prescriptions. (Tr. 557).

A May 2014 CT scan of Plaintiff's back showed minimal degenerative disease of the lower lumbar spine at L5, small to moderate disc bulges at L4-5 and L5-S1, and very small bulges at L2-L3 and L3-L4. (T. 471). According to Plaintiff, his difficulties began approximately five years earlier when he was involved in a motor vehicle accident. (T. 467).

In November of 2016, Plaintiff visited the ER complaining of back pain. (T. 557-62). He was taking daily narcotics for the pain. (T.557). He reported a history of asthma but was asymptomatic and a daily smoker. (T. 557-58). Examination findings were normal (T. 558), and a lumbar x-ray was normal, except for straightening of the lumbar lordosis and slight facet joint degenerative joint disease (T. 561). A chest x-ray showed underinflated lungs, but no acute findings (T. 562). Plaintiff was treated with morphine, then released with a diagnosis of "acute back pain" and instructions to see his primary care physician and continue his regular medications (T. 559).

In 2018, an x-ray of his thoracic spine showed no abnormalities (T. 259), although an MRI conducted later that same month, showed: some straightening of the spine from the cervical region to the lumbar spine; mild disc bulges and small central disc protrusion in the thoracic spine; no cord compression; and no abnormalities of the cervical cord in signal intensity. (T. 258).

### ii.  After Date Last Insured

In September of 2019, Plaintiff, complaining of vomiting and back pain, sought treatment at the ER. A physical exam was essentially normal, while a CT scan showed a 3mm distal right uretic stone with hydronephrosis.  (T. 514-524).

During a January 2020 visit to the ER for right leg and lower back pain (T. 430), an x-ray of Plaintiff's lumbar spine was unremarkable, (T. 433), while a March 2020, MRI of the thoracic spine showed central T3-4 herniation. (T. 267). In June of 2021, Plaintiff presented to the Emergency Room for low back pain and numbness in the right pain. (T. 473). He had decreased and painful range of motion and pain with a straight leg raise on the right. (T. 474).

### b.  Treatment Records

### i.  Prior to Date Last Insured

During a routine physical exam in April of 2019 by his primary provider, Plaintiff reported needing to use his albuterol inhaler for asthma on occasion when physically active; he took Hydrocodone for chronic pain and Lisinopril for blood pressure; and, at 5'10.5" tall and 306 pounds (BMI 43.3), he was morbidly obese. (T. 326-328).  His current medications included hydrocodone/acetaminophen and aspirin. (T. 326). He reported being rather physically active, including chopping

wood (T. 328-29). His physical examination, including his state of mind, neurologic condition, respiration, heart, and gate, was entirely normal (T. 330-331), and his asthma was characterized as mild, intermittent, and stable (T. 331-32). He characterized his pain issues as "other chronic pain" (T. 331).

### ii. After Date Last Insured

During a follow-up visit with his primary provider in October of 2019, Plaintiff's doctor noted that Plaintiff was using a right knee brace since August and taking prescription hydrocodone (two per day), lisinopril and aspirin as well as using an albuterol inhaler. Plaintiff weighed 325 pounds (BMI 46) and his blood pressure was 130/78. His physical examination was otherwise unchanged. (T. 317-323).

In January of 2020, having been to a chiropractor several times, Plaintiff again visited his primary physician for increased mid-lower back pain, and reported right buttock and down-leg numbness and burning. He walked with a cane, would not get out of bed due to pain, and took Tylenol and Ibuprofen in between pain pills. (T. 312). He ambulated with a standard cane for support, he had tenderness, and he had decreased range of motion "(ROM"). (T. 315). An x-ray was ordered, and Gabapentin was prescribed. (T. 316).

In February of 2020, Dr. Andrew Cappuccino, an orthopedist, evaluated the Plaintiff for complaints of back pain in both his lumbar and thoracic spine. (T. 287-288). Plaintiff exhibited a loss of contour of the spine. (T. 287). Plaintiff, who walked with the use of a cane, had slight knock knee position and lateral displacement of the patella throughout his gait cycle and exhibited free range of motion in all joints. (T. 288). There was no evidence of gross motor or sensory changes in the upper

extremity. (T. 288). Strength in the right lower extremity was 4/5 throughout with dense paresthesias and pain all the way to the foot while strength in the left lower extremity was 5/5 throughout with normal neurologic finings. (T. 288) . Dr. Cappuccino recommended an a rheumatological consultation over the concern of Ehlers-Danlos syndrome. (T. 287-288).

     A rheumatological workup in March of 2020 was negative except for a positive parathyroid hormone. (T. 308). He continued to walk with a cane, and he had tenderness and decreased ROM. (T. 309). It was noted that while Plaintiff's obesity definitely played a role in his pain—and possibly making things worse, he would have pain whether or not he was at this weight. (T. 310).  It was also recommended that Plaintiff stop smoking.  (T. 310-311).

     In April of 2020, Plaintiff reported that his pain was much worse than it was a month prior, and his follow up with rheumatology was delayed due to the pandemic. (T. 302). CBD oil was encouraged. (T. 304). At his October 2020 and November 2021 annual physicals, Plaintiff had lost some weight, which was difficult due to his chronic pain which he continued to experience. (T. 294-296. T. 588-590). Though he continued to need the Hydrocodone and Gabapentin to function daily; he was ambulating with a standard cane. (T. 300). While Plaintiff continued to smoke cigarettes, his blood pressure was controlled with medication, and he uses his rescue inhaler infrequently. (T.300).

     In March of 2021, Dr. A. Saeed, a state-agency medical consultant, reported that Plaintiff had the "severe" impairments of asthma, essential hypertension and obesity, but that there was insufficient evidence to make a disability determination

6

on or before Plaintiff's last insured date of June 30, 2019. (T. 79).  In April of 2021, Dr. Saeed's finding was affirmed by Dr. J. Randall, a state-agency medical consultant, who also determined that there was insufficient evidence to make such a disability determination. (T. 88).

Electromyography (EMG) and a Nerve Conduction Velocity (NCV) testing performed on Plaintiff in June of 2021 were normal with no sign of radiculopathy or neuropathy. (T. 410-411).

In July of 2021, Plaintiff was examined by a rheumatologist and showed tenderness in the right wrist and diffuse tenderness throughout the right lower extremity.  Otherwise, there was no joint abnormality, laxity or loss of motion. The claimant's gait was noted to be normal. The claimant denied having any morning swelling or stiffness. The doctor's impression was mechanical back pain. The claimant was referred for radiographs and blood tests. The x-rays showed some mild degenerative changes in the left shoulder as well as some soft tissue swelling in the digits of both hands. There was no evidence of inflammatory arthritis. (T. 378-380).

## 2. The ALJ's Decision:

Using the five-step sequential analysis, the ALJ made the following findings for the period prior to Plaintiff's June 30, 2019, date last insured.  At step one, the ALJ found the Plaintiff had not engaged in substantial gainful activity since his alleged onset date, and had the following severe impairments: degenerative disc disease in the thoracic and lumbar spine, asthma, and obesity (T.61-62).  At step

7

three, the ALJ found that Plaintiff's impairments did not, individually or in combination, meet or medically equal a listed impairment at 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 65-66). With regard to Plaintiff's back issues, the ALJ noted, that Plaintiff "walks using the aid of a cane. However, the exam findings show no evidence of any focal neurological deficits with respect to motor strength, sensation or reflexes. He has full range of motion in both upper extremities." The ALJ further found "that on or prior to the [date last insured], the [Plaintiff], based upon the objective medical evidence, had no need for, nor medical requirement to, use any assistive devices for ambulation." (T.66). With regard to his breathing condition, the ALJ noted that Plaintiff's "physical exam findings show no evidence of any respiratory distress. He uses a rescue inhaler as needed. There is no record of any emergency room or other medical appointment for acute respiratory symptoms at any time relevant to his application for benefits." (T. 66). Finally, in considering Plaintiff's obesity, the ALJ determined that Plaintiff "does not suffer from significantly abnormal neurological functioning and has not suffered from end organ damage...[such that Plaintiff's] combination of impairments, including obesity, do not meet or equal the severity of an impairment described in Appendix 1." (T. 66).

Upon extensive consideration of the record, the ALJ determined that Plaintiff, through the date last insured, had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b), as he had the ability to "lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for six hours in an eight hour workday over a forty hour workweek as well as to sit for six

hours in an eight hour workday over a forty hour workweek. The claimant can occasionally climb stairs and ramps but never ropes, ladders or scaffolds. He can occasionally balance as well as occasionally stoop, crouch, kneel and crawl. The claimant must avoid concentrated exposure to unprotected heights and moving and dangerous machinery. However, he could operate a motor vehicle. The claimant would have to avoid concentrated exposure to pulmonary irritants." (T. 67-68). At step four, the ALJ determined that Plaintiff's RFC did not permit him to perform his past relevant work (T. 68). At step five, the ALJ found that other work existed in significant numbers in the national economy that Plaintiff could perform given his RFC and vocational factors, including age. (T. 69). The representative occupations in which Plaintiff could work included jobs such as a price marker, a router, and a cashier. (T. 69-70). Consequently, the ALJ found that Plaintiff was not disabled and denied his claims. (T. 70).

## II.  LEGAL STANDARD

### A. Standard of Review

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not this Court's function to make a *de novo* determination as to whether the claimant is

9

disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera*, 697 F.3d at 151 (internal quotations omitted).

**B. Legal Standard to Determine Disability**

To determine whether a person claiming to be disabled is eligible for benefits under the Act, the ALJ follows a familiar five-step sequential evaluation, determining: (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted). The ALJ need not, however, recite every piece of evidence that contributed to the decision so long as the record permits a reviewing court the ability to glean the rationale of the ALJ's decision. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

### III.  ANALYSIS

**The ALJ's Decision is Supported by Substantial Evidence**

Plaintiff's sole contention is that the ALJ's RFC finding is unsupported by substantial evidence because the ALJ improperly relied "on his own lay opinion after failing to develop the record for opinion evidence relating to the relevant period." Dkt. 4-1, p. 10. Plaintiff asserts that the ALJ should have further developed the record by obtaining "a retrospective opinion relating to the relevant period."  *Id*. at 10. This Court disagrees.

At the outset, the Court observes that Plaintiff was "required to demonstrate that []he was disabled as of the date on which []he was last insured."  *Behling v. Com'r of Soc. Sec.*, 369 F. App'x 292, 294 (2d Cir. 2010)(citing *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir.1989)).  However, there is scant evidence of Plaintiff suffering from any disability on or before June 30, 2019, his date last insured. Indeed, shortly before that date, Plaintiff underwent a physical exam with his primary provider in April of 2019, and during that exam, Plaintiff  reported taking Hydrocodone for chronic pain and Lisinopril for blood pressure.  He was also morbidly obese.  Despite those conditions, however, Plaintiff, at that time, also reported being rather physically active, including chopping wood. (T. 328-29).  While he had "mild, intermittent, and stable" asthma (T. 331-332), he reported that he only needed to his albuterol inhaler for asthma on occasion when physically active. Further a physical examination revealed that Plaintiff's state of mind, neurologic condition, respiration, heart, and gate, were entirely normal. (T. 330-331),  He

described his pain as "chronic." (T. 331). Moreover, the ALJ noted that even subsequent to the date last insured,[3] Plaintiff's thoracic and lumbar spine imaging, while showing some degenerative changes, did not show significant nerve impingement (T. 62-65, citing T. 257-66, 277-78, 412-13, 430-33, 471); Plaintiff's rheumatology blood work was normal and no arthritis was exhibited (T. 63, citing T. 306-11, 377-80); Plaintiff had normal electrodiagnostic studies (T. 64, citing T. 410-11) and a normal gait, and no focal or neurologic deficits (T. 62-63, citing T. 317-323, 326-32, 421-25, 515-24, 557-62).

The ALJ further noted that Plaintiff's treatment— both before and after Plaintiff's last date insured—had been conservative and limited to medications, chiropractic manipulation, and a TENS unit (T. 64, citing T. 317-23, 326-32, 408-09). Such conservative treatment can be—and here clearly was—construed by the ALJ as diminishing Plaintiff's credibility regarding the severity of his symptoms and the limitations they presented. See, *Kimberley H. v. Comm'r of Soc. Sec.*, No. 19-CV-6766 HKS, 2021 WL 1054373, at *5 (W.D.N.Y. Mar. 19, 2021)(citing *Dixon v. Berryhill*, 17 Civ. 0334 (AJP), 2017 WL 3172849, at *16 n.33 (S.D.N.Y. July 26, 2017) ("Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about their symptoms not credible based, inter

---

[3] The Second Circuit has recognized that medical evidence obtained subsequent to Plaintiff's last insured date "is not irrelevant to the question whether [Plaintiff] had been continuously disabled …" *Arnone v. Bowen*, 882 F. 2d at 39 (finding that medical evidence obtained before and after an applicant is insured for DIB can be used to show that a plaintiff was disabled before the specified date, depending on the nature of the disability).

13

alia, on a conservative treatment record.") (citations and quotation marks omitted) (collecting cases)).   While Plaintiff points to evidence indicating some greater limitations, he relies heavily on records significantly post-dating his June 2019 date last insured. However, to establish error, Plaintiff would not only have to establish that not only was he subject to additional restrictions, but that those restrictions existed prior to June 2019. *Arnone v. Bowen*, 882 F.2d at 37-38. Plaintiff cannot do so.

Plaintiff further contends that the ALJ—when presented with two medical consultants who, upon review of Plaintiff's case, were unable to offer an opinion regarding Plaintiff's disability—should have sought additional medical opinions. Such suggestion fails, however, because "[w]hile there must be evidentiary support for the ALJ's specific limitations, that support need not be in the form of a medical opinion as long as the Court can glean the ALJ's rationale from the written determination." *Christine K. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00422 EAW, 2025 WL 879971, at *6 (W.D.N.Y. Mar. 21, 2025)(citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (medical opinion providing specific restrictions reflected in the RFC is not required if the record contains sufficient evidence from which an ALJ can assess the RFC)).  As Judge Sinatra of this Court noted in rejecting a similar argument, "[a]n ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion." *Fabian E. v. Comm'r of Soc. Sec.*, No. 1:21-CV-187 (JLS), 2023 WL 5843529, at *5 (W.D.N.Y. Sept. 11, 2023).

> Indeed, an RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ. See 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."), see *id*. § 416.946(c) ("the administrative law judge or the administrative appeals judge at the Appeals Council ... is responsible for assessing your residual functional capacity"). Additionally, the regulations direct an ALJ not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." *Id*. § 416.920c. Therefore, Plaintiff's assertion that the ALJ's RFC determination was the product of legal error because it was not supported by a specific medical opinion is without merit.

*Fabian*, 2023 WL 5843529, at *5. The Second Circuit does not require the ALJ to undertake a function-by-function analysis as part of the RFC assessment. See *Cichocki v. Astrue*, 729 F.3d 172, 174 (2d Cir. 2013). Instead, the relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence. *Cichocki*, 729 F.3d at 177. Here, this Court concludes that the ALJ's RFC was proper and supported by substantial evidence.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. # 4) is **DENIED** and the Commissioner's motion for judgment on the pleadings (Dkt. # 7) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

*s/Richard J. Arcara*_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  April 29, 2025
        Buffalo, New York